# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

ANDREA L. VICKERS,

               Defendant.

Case No. 3:14-cr-00003-SLG

## ORDER RE MOTION TO VACATE UNDER 28 U.S.C. § 2255

Before the Court at Docket 72 is Defendant Andrea Vickers's Motion to Vacate Under 28 U.S.C. § 2255. The Government opposed the motion at Docket 77. An evidentiary hearing on the motion was held on October 3 and October 4, 2017. Five witnesses testified: Mr. Vickers's former attorney, Ronald A. Offret; Andrea Vickers; Deputy U.S. Marshal Rochelle Liedike; case agent Sarah Lynn Foreman; and Darko Gospavic from AT&T.

## BACKGROUND

On January 23, 2014, the Government filed an Indictment in this case, charging Mr. Vickers with Escape.[1] On February 20, 2014, the Government filed a First Superseding Indictment that added the additional charge of Carjacking.[2] Due to a conflict that had arisen with his first lawyer, CJA counsel Ronald Offret was appointed to represent Mr. Vickers at that time.[3]

---

[1] Docket 3 (Indictment).

[2] Docket 17 (First Superseding Indictment).

[3] Docket 19 (Notice).

On March 17, 2014, the parties filed a plea agreement. The proposed change of plea hearing was held on March 27, 2014, at which time Mr. Vickers pleaded guilty to Counts 1 and 2 of the Indictment.[4] In the plea agreement and while under oath at the change of plea hearing, Mr. Vickers admitted to all relevant conduct as outlined in the plea agreement and waived all rights to appeal and all rights to collaterally attack his conviction and sentence except on grounds alleging "ineffective assistance of counsel – based on information not now known to the defendant, and which, in the exercise of reasonable diligence, could not be known to the defendant at the time the Court imposes sentence" and a challenge to the voluntariness of the plea.[5]

The factual basis for the carjacking charge to which Mr. Vickers admitted in the plea agreement and while under oath on the record at the change of plea hearing provides as follows:

> On January 10, 2014, the defendant confronted the victim, CM, at her residence in Anchorage. He forced the victim and her 10-month-old child to get into her vehicle, a 2008 Hyundai Sonata, which was manufactured outside of Alaska and therefore was transported, shipped, and received, in interstate and foreign commerce.
>
> The defendant used force, violence, and intimidation to force the victim from the driver's seat of her car and into the passenger seat. He then got into the driver's seat and took control of the vehicle. He also hit her in the face. Over a period of several hours, the defendant drove the victim and her child around in Anchorage, threatening to take her to "the Valley" and kill and burn her. The defendant also threatened to throw the infant out the window of the vehicle.

---

[4] Docket 35 (Min. Entry).

[5] Docket 30 (Plea Agreement) at 14.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 2 of 25

In the early morning hours of January 11, 2014, the victim asked for permission to drop off the baby at a friend's home. The defendant agreed, but threatened to kill her if she tried anything "shady." The victim left her child with a friend, explained that the defendant had kidnapped her, and asked the friend to call the police with a description of the car.

Shortly thereafter, Anchorage police located the vehicle and attempted to stop it. The defendant attempted to elude the police, recklessly endangering other people during flight as he sped away. The defendant collided with another vehicle while fleeing, causing injury to the victim as well as the passengers of the other vehicle he struck. The victim sustained injuries that resulted in an obvious disfigurement that is likely to be permanent when the right side of her face was badly cut by broken window glass in the collision.

The defendant fled on foot, and was apprehended by the police. After his arrest, he repeatedly contacted the victim. Based on the evidence of these contacts, on February 24, 2014, United States Magistrate Judge John D. Roberts ordered the defendant to have no contact with the victim. Upon return to the jail after the hearing, the defendant immediately began attempting to contact the victim by telephone.[6]

On June 13, 2014, this Court sentenced Mr. Vickers to a term of imprisonment of 48 months on Count 1 and 180 months consecutive on Count 2.[7]

On January 14, 2015, Mr. Vickers filed the instant motion seeking to vacate the carjacking sentence pursuant to 28 U.S.C. § 2255. He was self-represented at that time. The motion asserted four grounds for relief: First, Mr. Vickers maintained that his first appointed lawyer withdrew due to a conflict of interest, and then the Superseding Indictment adding Count 2 was filed before a plea agreement was finalized. Mr. Vickers asserted, "I had requested evidence be obtained by my appointed counsel and it was not

---

[6] Docket 30 at 5–7.

[7] Docket 58 (J.) at 2.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 3 of 25

obtained in a timely manner which caused evidence to be destroyed that showed my innocence."[8] Ground two alleged a *Brady* violation. Mr. Vickers asserted that cell phone data from the victim's phone that would have shown his innocence was withheld from him. Ground three alleged prosecutorial misconduct. Specifically, Mr. Vickers asserted that the Government recorded attorney-client telephone calls and improperly relied on them. Ground four alleged a violation of due process based on an assertion that the Assistant U.S. Attorney knowingly presented perjured testimony to the grand jury. Briefing on the motion was completed in early 2015. CJA counsel was appointed to represent Mr. Vickers in September 2015.[9] After several continuances, the evidentiary hearing was held in October 2017. Mr. Vickers's asserted grounds for relief were refined by the evidence presented at the hearing and are discussed below.[10] After the hearing, the parties filed supplemental briefing on whether the failure to request a grand jury transcript and/or file a motion to dismiss the indictment may constitute ineffective assistance of counsel.[11]

---

[8] Docket 72 at 4.

[9] *See* Docket 87 (Min. Entry re: Att'y Appointment), Docket 88 (Notice of Att'y Appearance).

[10] No evidence was presented regarding a possible *Brady* violation related to the cell phone records; nor was any evidence presented to support the assertion that an Assistant U.S. Attorney knowingly presented perjured testimony to the grand jury. No evidence was presented as to the steps taken, or not taken, by Mr. Vickers's first lawyer to try to obtain evidence. And no evidence was presented to support the claim that the Government recorded attorney-client telephone calls and improperly relied upon them. Those claims are all denied for lack of any evidence to support them.

[11] Docket 163 (Government's Suppl.), Docket 164 (Mr. Vickers's Suppl.).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 4 of 25

## LEGAL STANDARD

In order to succeed on an ineffective assistance of counsel claim, Mr. Vickers must satisfy the two-pronged test set forth in *Strickland v. Washington*, which requires him to show both deficient performance and prejudice.[12]   Deficient performance requires a showing that trial counsel's representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms.[13]   There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance."[14]   To establish prejudice, a petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[15]   Failure to meet either prong is fatal to a petitioner's claim.[16]

Mr. Vickers carries the burden of proving he is entitled to have his conviction vacated.[17]   Thus, he must prove by a preponderance of the evidence that he is entitled to relief due to either the involuntariness of his plea or the ineffectiveness of his counsel.

---

[12] 466 U.S. 668, 687 (1984).

[13] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

[14] *Strickland*, 466 U.S. at 689.

[15] *Id.* at 694.

[16] *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) ("Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" (quoting *Strickland*, 466 U.S. at 697)).

[17] *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 5 of 25

**DISCUSSION**

**1. Ineffective Assistance of Counsel Issues**

Although several different points were raised on the effectiveness of trial counsel during the course of this multiyear motion practice, the Court will focus on the arguments presented by Mr. Vickers in his counsel's closing argument and written submission after the close of the evidentiary hearing, as that is where the various theories advanced by Mr. Vickers coalesced based on the evidence that was presented.

The Court first makes the following preliminary findings: The victim of the carjacking, CM, did not testify at the evidentiary hearing; her only sworn statement in the record is her testimony before the grand jury. Based on all the evidence that was presented at the hearing, and particularly both Mr. Vickers's and CM's statements on the recorded jail calls, the Court finds that Mr. Vickers did not establish by a preponderance of the evidence that CM lied to the grand jury with respect to those facts directly relevant to the elements of the carjacking. In addition, the Court finds that Mr. Vickers did not establish by a preponderance of the evidence that CM lied to the grand jury when she testified that Mr. Vickers had a handgun with him at the time of the carjacking. The Court finds, based on the recorded calls, that Mr. Vickers repeatedly stressed to CM that if she continued to assert that a gun was present, he would be facing a life sentence. But he told her that if she disavowed the gun, then his sentence would be far shorter. Based on the entirety of the evidence, including Mr. Vickers's extensive criminal history as detailed in the Presentence Report, the Court finds it more likely than not that Mr. Vickers used a gun during the carjacking, but successfully persuaded CM to recant that critical fact.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 6 of 25

*a. The Grand Jury Transcript*

Mr. Vickers asserts that his trial counsel's representation of him was inadequate because he did not file a motion seeking to obtain a transcript of CM's testimony before the grand jury. Trial counsel Ronald Offret testified at the evidentiary hearing that he was unaware that he could even seek to obtain the transcript. Thus, Mr. Vickers correctly maintains that the decision not to seek the transcript was not a strategic decision by trial counsel.

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) authorizes a court to disclose a grand jury transcript "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The standard for obtaining a grand jury transcript in federal court is a high bar. "This indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity."[18] One recognized purpose of grand jury secrecy is to impede the tampering of witnesses by targets of the investigation.[19] The evidence in this case, as demonstrated in the extensive recorded jail calls and the order to show cause proceedings in 2014, demonstrated extensive efforts at witness tampering undertaken by Mr. Vickers. In dozens, if not hundreds, of phone calls in early 2014, Mr. Vickers repeatedly pressured the victim CM to recant or revise her statements about the carjacking.

---

[18] *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 (1958) (internal quotes and citation omitted).

[19] *United States v. Dynavac, Inc.,* 6 F.3d 1407, 1411 (9th Cir. 1993).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 7 of 25

The Court will not determine whether Mr. Offret's failure to seek the grand jury transcript was deficient, because Mr. Vickers has not demonstrated that he was prejudiced by that failure. To establish prejudice, a petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[20] Mr. Vickers has not shown that if Mr. Offret had filed a motion seeking a transcript of the grand jury, there is any possibility, and certainly not any reasonable probability, that the Court would have granted such a motion. To the contrary, given the repeated contacts that Mr. Vickers initiated to CM in violation of court orders in the months shortly after CM testified to the grand jury in which he urged her to change her statements, and given that there is no sworn statement by CM in this record in which she recants her testimony, it is simply not plausible that this Court would have granted a motion to release a copy of the grand jury transcript to Mr. Vickers.

At most, if such a motion had been filed, the Court may have reviewed the transcript *in camera* to determine if its production to Defendant was warranted. Having now reviewed that transcript, the Court finds that had such an *in camera* review been done at some point prior to sentencing, the production of the transcript to the defense would not have been ordered unless CM had testified at trial. The primary focus of the alleged perjurious statements by CM relate to an issue peripheral to the carjacking incident—the extent to which CM was aware of Mr. Vickers's criminal history. There was also evidence presented that Mr. Vickers disputed CM's grand jury testimony that he had a gun present at the carjacking, and indeed the factual basis in the plea agreement does

---

[20] *Strickland*, 466 U.S. at 694.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 8 of 25

not reference a firearm. CM told the grand jury that Mr. Vickers did have a gun, and described it in some detail to the grand jury. But as Mr. Vickers's counsel acknowledged at the evidentiary hearing, the record does not contain any sworn testimony of CM that Mr. Vickers did not have a gun during the carjacking.[21] As discussed above, the Court finds it more likely than not that Mr. Vickers was in fact armed during the carjacking. But in any event, the presence of a gun was not included in the factual basis of the plea agreement. Based on the foregoing, Mr. Vickers has not demonstrated that he was prejudiced by his trial counsel's failure to request the grand jury testimony because such a request would have been futile.

###### b. Motion to Dismiss Indictment

Mr. Vickers next argues that his trial counsel was ineffective for failing to file a motion seeking dismissal of the indictment. As discussed above, the Court has found that Mr. Vickers was not prejudiced by his attorney's failure to obtain the grand jury transcript; therefore, this claim necessarily fails as well. Moreover, the Ninth Circuit cautions that a constitutional error justifying dismissal of an indictment only occurs when either "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair" or when the "defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the

---

[21] Mr. Vickers's current counsel acknowledged at the end of the evidentiary hearing, "[t]here is no sworn testimony that she lied about the gun." Docket 166 (Tr. of Evidentiary Hr'g) at 36. Contrary to Defendant's assertion, the Court finds the text that Mr. Vickers sent to CM at 11:57 p.m. on the night of the carjacking is not persuasive evidence that Mr. Vickers was unarmed at that time: "We might box he might shoot who know but f--- it I die fo a cause yall family." Ex. P. at 1.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 9 of 25

fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."[22]

Mr. Vickers has not made the requisite showing. Even assuming that CM's statements about her knowledge of Mr. Vickers's criminal background and the presence of a gun to the grand jury were not accurate, her overall testimony to the grand jury was fully consistent with the elements of a carjacking offense.[23] In short, Mr. Vickers has not proven that the structural protections of the grand jury process were fundamentally unfair. Nor does the record in this case contain any evidence of an intentional systematic and pervasive pattern of prosecutorial misconduct in connection with the grand jury or otherwise.

### c. *Failure to get surveillance videos*

Mr. Vickers next argues that his trial counsel were ineffective because both his first and second trial counsel failed to immediately get relevant surveillance videos from the

---

[22] *United States v. Larrazolo*, 869 F.2d 1354, 1357–58 (9th Cir. 1989), *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57 (1986)). At the evidentiary hearing, Mr. Offret testified that in his opinion, filing a motion to dismiss the indictment based on perjured testimony would not have been "at all successful"; rather, it would have been "a waste of time." Docket 165 (Tr. of Evidentiary Hr'g) at 60.

[23] In closing arguments at the evidentiary hearing, Mr. Vickers's counsel stressed the fact that CM testified that Mr. Vickers picked her up after she got off work at approximately 6:15 p.m. on January 10, 2014, but the cell phone records show that CM had a number of calls and texts with him after 7:00 p.m. *See* Ex. P at 1. The Court has reviewed the cell phone records, and based on that review, finds it more likely than not that Mr. Vickers did not arrive promptly at 6:15 p.m. to pick up CM, and her repeated texts and phone calls from 7 p.m. to 7:30 p.m. that day to Mr. Vickers consist of her efforts to try to get him to pick her up from her job, as he had possession of her car at that time. *See, e.g.,* Ex. Q at 1, text from CM to Mr. Vickers at 7:21 p.m.: "Nooo, can you please just come ii am freezing," and at 7:23 p.m.: "I am talking too mi mom. Please come. I am cold." And at 7:24 p.m.: "Are you coming??" After that text, CM did not send another text to Mr. Vickers until 11:29 p.m.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 10 of 25

Alaska Club or from two gas stations. At the evidentiary hearing last fall, Mr. Vickers testified that footage of video surveillance from those locations would have contradicted CM's testimony.

Mr. Vickers testified that video surveillance footage from a Chevron station on the night of the carjacking would have shown that "at the time that she said that I had a gun to her head that we were actually at the Chevron station getting gas, and that she went inside and paid for the gas and then came back outside and pumped the gas and drove off."[24] The Court observes that CM's 10-month old child was in the car at the time.[25] The Court finds Mr. Vickers's testimony on this topic was not credible, and he presented no other corroborating evidence to support his conclusory assertions regarding a Chevron station.[26] For example, he never explained what Chevron station he was referring to, at what time the gasoline was purchased, and why this is never mentioned on the recorded jail calls with CM until April 2014. There is also no evidence in the record of Mr. Vickers's

---

[24] Docket 165 at 116.

[25] In Mr. Vickers's testimony at the evidentiary hearing, he acknowledged the unlikelihood of CM leaving her baby in the car at the gas station: "would she abandon her child and leave her child in the car, I don't think that's feasible." Docket 165 at 149.

[26] In a jail call on April 8, 2014, Mr. Vickers told CM through a third party that "they just got tape surveillance from the gas station, and it shows you driving the car, pumping the gas and paying for the gas inside and driving away. It says also his attorney has a text message you sent as well as a call you made when you arrived to pick him up." CM responded, "Okay. What's his point right now? I don't get it?" The conversation continued, "He wants you to tell the truth. He never came to your house. He never punched you in the face, never forced you in the car, and that you came to pick him up." CM responded, "Is he serious?" To which the third party responded, "Yeah." And CM persuasively stated, "He's lying." She added, "What is he talking about? I did tell the truth. I don't get what he's talking about . . . The only thing I lied about is that he had a gun. That's the only thing. Everything else is true. I don't know what he's talking about." The third party asked, "That night you all didn't go to a gas station?" CM responded, 'No, we didn't go to a gas station at all." Docket 165 at 236–41. Although CM's statements were not under oath, the Court finds them mostly credible and persuasive, except as to the presence of the gun, as discussed above.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 11 of 25

first lawyer's investigative efforts on this issue. Mr. Offret did not come into the case until over five weeks after the carjacking, and no evidence was presented as to when the unspecified Chevron station's video footage from January 10 or 11, 2014 would have been overwritten or whether there even was video footage ever made on that day by that station.

Mr. Vickers also testified that video surveillance of an unspecified Holiday gas station would have established that earlier in the day of the carjacking, he had run out of gas and he had gone to a Holiday gas station and obtained the red gas can to put the gas in, and that was the gas can that was found in the car after the carjacking.[27] Mr. Vickers also testified that Mr. Offret told him that he had spoken with the manager at the Holiday, who told Mr. Offret that they still had the video surveillance and would put it in the safe for him.[28] The Court found Mr. Vickers's testimony about a trip to an unspecified Holiday station at an unspecified time to be not credible. No other evidence was presented to support his assertion that he went to an unspecified Holiday station and obtained a red gas can earlier in the day of the carjacking. And as with the Chevron station, there is no evidence in the record from Mr. Vickers's first lawyer as to the investigation he did, if any, on this issue. Nor was any evidence presented about when the Holiday station's video footage would have been overwritten. The Court also notes that Deputy Marshal Liedike

---

[27] Docket 165 at 117.

[28] Docket 165 at 117. This is inconsistent with Mr. Offret's testimony on this topic, which this Court finds to be more credible: that Mr. Offret initially misunderstood Mr. Vickers as to the specific Holiday station, and when Mr. Vickers gave him the name of a second Holiday gas station, that station had overwritten the surveillance tape and "they had no evidence that would have assisted us." Docket 165 at 31.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 12 of 25

testified that there was fuel in the red gas can after the crash at the end of the carjacking, which is inconsistent with Mr. Vickers's testimony that he had obtained the fuel to put in the gas tank.[29] In sum, Mr. Vickers did not establish that Mr. Offret's investigative efforts with respect to the gas stations were in any respect ineffective.

As to the Alaska Club, the evidence in the record was that the data in the system was overwritten after 30 days or when there was no space left on the storage disk.[30] Thus, it appears likely that Mr. Offret could not have obtained any video footage from there when he was appointed to represent Mr. Vickers in late February 2014. And Mr. Offret persuasively testified that based on the information he had initially received from Mr. Vickers, he had gone to that parking lot and was shown where the video cameras were, "and from the information I had [from Mr. Vickers], that wouldn't have shown anything."[31] Mr. Offret explained that after he told Mr. Vickers that there was no video camera coverage of the area he had described, Mr. Vickers told Mr. Offret that it was a different area of the Alaska Club property that might have relevant footage. When Mr. Offret then asked the Alaska Club about that area, it said it had already recorded over that video footage by that time.[32] No evidence was presented as to precisely where Mr. Vickers is alleging he was parked with CM at that property, or where the cameras were actually located. Nor was testimony presented as to whether the time spent at the Alaska Club parking lot was during the first, after work encounter between CM and Mr. Vickers,

---

[29] Docket 165 at 214.

[30] Ex. Y at 1.

[31] Docket 165 at 32.

[32] Docket 165 at 33.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 13 of 25

or if it was in the second carjacking encounter.  The Court finds that Mr. Offret's efforts with respect to the potential video footage at the Alaska Club were not constitutionally deficient.  And no testimony or other evidence was presented as to the investigative efforts made, or not made, by Mr. Vickers's first counsel with regard to this potential video footage.

Moreover, even if trial counsel had been deficient in not obtaining the video tapes, the Court was unpersuaded by the evidence presented, which consisted principally of Mr. Vickers's own conclusory and imprecise testimony on these topics at the evidentiary hearing, that if trial counsel had been able to obtain video footage from the various locations on the day of the carjacking, the content on such video footage would have been such that Mr. Vickers would not have pleaded guilty to the carjacking charge.

### d.  Failure to procure Mr. Vickers's cell phone records

Mr. Vickers appears to assert that Mr. Offret was ineffective because he did not review Mr. Vickers's own cell phone records.  To the extent this is a claim, the Court does not find that Mr. Offret's failure to review Mr. Vickers's own cell phone records constituted constitutionally ineffective counsel.   Presumably, Mr. Vickers would have known the content of his own cell phone communications prior to deciding to plead guilty.  Mr. Offret testified, and the records reflect, that Mr. Vickers's phone had gone dead just a little before midnight on the day of the carjacking.   Mr. Offret also testified that he did not recall whether Mr. Vickers had told him that there might be useful information on that phone.[33]

---

[33] Docket 165 at 44–45.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 14 of 25

Mr. Vickers's cell phone records were admitted as exhibits at the evidentiary hearing.[34] The Court has carefully reviewed them. Mr. Vickers points to the following text he sent at 11:56 p.m. on January 10, 2014 to CM: "We might box he might shoot who know but f--- if I die fo a cause yall family."[35] Mr. Vickers maintains this statement allows for a reasoned inference that he did not have a gun. Mr. Vickers did not explain who "he" is in this text, and who is the "family" he references. The Court disagrees with Mr. Vickers's counsel's interpretation of this text.[36] Regardless, the Court finds that if trial counsel had obtained this text message, it would not have led a reasonable defense attorney to change his recommendation as to the plea; nor would a defense based on this text have likely succeeded at trial.[37] Further, Mr. Vickers did not testify that if this text message had been available to him, he would not have pleaded guilty but would have proceeded to trial.[38] Since Mr. Offret successfully negotiated a factual basis for the plea that did not contain any reference to Mr. Vickers possessing a firearm, the Court is not persuaded by a preponderance of the evidence that if this text message had been obtained by Mr. Offret and considered by him and Mr. Vickers, there is a reasonable

---

[34] Ex. P, Ex. Q.

[35] Ex. P at 1.

[36] *See supra* note 21.

[37] *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (stating *Strickland* standard for ineffective assistance of counsel in guilty plea context: "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[38] Mr. Vickers testified that if he had *all* of the evidentiary items (the video footage, the cell phone records, and CM's testimony) that were discussed at the hearing, he would have gone to trial. Docket 165 at 136.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 15 of 25

probability that Mr. Vickers would not have pleaded guilty to the carjacking charge without a firearm in the factual basis of the plea and instead would have insisted on going to trial.

   e. *Failure to review CM's extracted messages.*

When this motion was first filed, Mr. Vickers was of the view that the Government had wrongfully failed to provide his counsel with CM's extracted text messages. But at the evidentiary hearing, it became clear that Mr. Offret had in fact received those text messages from the Government on March 6, 2014, less than a month after their extraction, but he had no memory of having reviewed them in 2014.[39]

At the evidentiary hearing, Mr. Offret testified that if he had reviewed the cell phone information from CM's phone and the grand jury transcript, he would have advised Mr. Vickers not to plead guilty to the carjacking charge.[40] However, Mr. Offret did not testify that he had in fact reviewed CM's cell phone information, and he provided no testimony as to what specific information in those cell phone records would have caused him to change his advice to Mr. Vickers about pleading guilty. Similarly, he testified that he had "just reviewed a couple of portions" of the grand jury transcript shortly before the evidentiary hearing.[41] He did not specify what portions of that transcript he had reviewed; nor did he explain why the testimony in those portions would have altered his advice regarding pleading guilty. Mr. Offret had testified that CM had already told him before the change of plea hearing that she had lied to the grand jury; therefore, a transcript of the

---

[39] *See* Ex. 16.

[40] Docket 165 at 64.

[41] Docket 165 at 50.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 16 of 25

testimony to confirm that would have added little to the information he already had in that regard.

Further, the Court finds, based on its review of the cell phone records that were admitted into evidence, that the information contained in those records does not substantially rebut the fact that CM was the victim of a carjacking perpetrated by Mr. Vickers on January 10 through 11, 2014. Therefore, even if Mr. Offret's representation fell below the range of competence demanded of attorneys in criminal cases, Mr. Vickers has not shown that there is a reasonable probability that, had he and Mr. Offret reviewed all of the cell phone records, Mr. Vickers would not have pleaded guilty to the carjacking charge.[42]

f. *Advice to sign the plea agreement and plan for CM to appear at the change of plea hearing and exculpate Mr. Vickers*

At the fall 2017 evidentiary hearing, Mr. Offret testified that if CM was unwilling to testify on behalf of Mr. Vickers, then in his view, Mr. Vickers did not have any viable way to prove his version of his case.[43] The record contains no indication that CM was ever willing to testify for Mr. Vickers; it appears she is still unwilling to testify on behalf of Mr. Vickers. In any event, Mr. Vickers signed the plea agreement on March 15, 2014—nearly two weeks prior to the change of plea hearing. Mr. Offret testified that he spent over two

---

[42] *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005) (rejecting ineffective assistance claim where defendant pointed to no evidence that, had his attorneys performed differently, he would have insisted on proceeding with the sentencing phase of the trial).

[43] Docket 165 at 51. Mr. Offret testified, "Without [CM] I thought that there was very, very little possibility that he could -- that he could prevail[.]" Docket 165 at 51. Notably, this testimony that CM's testimony at trial was critical to Mr. Vickers's defense is inconsistent with Mr. Offret's testimony that CM's grand jury testimony and the cell phone records alone would have been sufficient to have changed his advice to Mr. Vickers regarding pleading guilty. *Cf.* Docket 165 at 64.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 17 of 25

hours with Mr. Vickers on March 15 discussing the plea agreement. He indicated that as of that date, CM was not willing to testify for Mr. Vickers. Mr. Offret testified in October 2017 that "[i]f [CM] was coming [to court] to testify, I would have withdrawn the plea document."[44] Mr. Offret did not explain what CM's testimony would have needed to contain. In particular, he did not explain whether CM would have needed to completely recant the entire carjacking incident or only recant the presence of the firearm.

CM was present in the courtroom at the change of plea hearing on March 31, 2014, but she did not testify. Mr. Offret testified at the evidentiary hearing in 2017 that he tried to speak privately with CM before the start of the hearing, but she would not speak to him at that time.[45] And he indicated that during his private conversations with Mr. Vickers at the change of plea hearing, he was telling Mr. Vickers that "she is not going to testify . . . [s]o the issue was do we take the plea agreement as it is and move forward, because it didn't seem like we had her cooperation at all."[46]

At one point during the fall 2017 evidentiary hearing, Mr. Offret testified as follows:

> And I think as Your Honor recalls when we had the plea hearing, she actually came to the courtroom and we asked if we could call her as a witness because we were hoping at the last minute to get this information before the Court.[47]

---

[44] Docket 165 at 52.

[45] Docket 165 at 53. Mr. Offret testified that he spoke to CM a number of times in early 2014; he estimated he spoke with her "anywhere from eight to ten times" and that she was "[a]lways cooperative until the end" even though "[s]he didn't follow through." Docket 165 at 43. CM's recantation email was not written until April 2014, after the change of plea hearing.

[46] Docket 165 at 53.

[47] Docket 165 at 36.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 18 of 25

This testimony is not at all consistent with the transcript of the change of plea hearing. Mr. Vickers and his counsel did not ask to call CM to testify at the outset of the change of plea hearing, or at any other time prior to Mr. Vickers pleading guilty to the two charges. To the contrary, at the very outset of the hearing, right after the Court announced that "it's the time that's been set for a proposed change of plea," the Court asked each party if it was ready to proceed with the change of plea, and Mr. Offret responded, "Yes, Your Honor."[48] Mr. Vickers then had an oath administered to him, and proceeded to testify and participate appropriately in the change of plea colloquy. He testified that his lawyer had answered all of his questions and he was satisfied with the legal representation and advice that he had received from Mr. Offret.[49] Mr. Vickers knew at that time that the video footage had not been obtained, that the cell phone records had not been reviewed, and that CM had told Mr. Offret and Mr. Vickers that she had lied about the gun to the grand jury. Nonetheless, Mr. Vickers elected to proceed with pleading guilty.

Prior to the guilty pleas, the only pause in the change of plea proceeding occurred when the Court asked Mr. Vickers whether anyone had promised or guaranteed him anything that was not in the plea agreement to get him to change his plea. After a brief private discussion between Mr. Vickers and Mr. Offret, the Court asked the same question again and Mr. Vickers responded without qualification, "No."[50] At last fall's evidentiary hearing, Mr. Vickers and Mr. Offret each had differing recollections as to their

---

[48] Ex. 14 at 3.

[49] Ex. 14 at 7.

[50] Ex. 14 at 17.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 19 of 25

conversation during that pause.[51] Both of their recollections are flatly inconsistent with the record of the change of plea hearing. The subject of the pause is explained in a sealed proceeding that took place immediately after the pause and before the entry of the guilty pleas, and is completely unrelated to CM.[52]

The Court next asked the Government lawyer to state the factual basis for the plea. Neither Mr. Offret nor Mr. Vickers voiced any objection or request at that time. Instead, after the Government lawyer stated the factual basis, Mr. Vickers affirmed under oath that he had done all of the things that the Government lawyer stated he could prove Mr. Vickers had done.[53] The Court then acknowledged that CM was in the courtroom, and asked the Government lawyer whether the victim sought to address the Court. The lawyer responded, "The victim's here today, does not wish to address the Court today, would like to address the Court at sentencing perhaps."[54] There was no comment from either Mr. Offret or Mr. Vickers, and no request for her to testify. The Court then asked Mr. Vickers how he would plead on each of the two charges, and he responded "Guilty" on both counts. The sentencing date was then set and the pretrial sentence report ordered.

---

[51] *See* Docket 165 at 109–10 (Mr. Vickers testified that during the pause, Mr. Offret "told me that based on the fact that CM wasn't willing to testify as to what happened that I had no other options, and I told him I was going to speak up and tell them about what was happening and her lying about things, and he said if I did that that Tom Bradley was going to hang me."); Docket 165 at 53 (Mr. Offret testified that during that pause, "I was telling Andrea that [CM] is not going to testify, she's going to lose her child, things that we had talked about when I was discussing the plea agreement with him.").

[52] That portion of the change of plea hearing has not been transcribed, but the Court recently listened to the audio of that sealed proceeding.

[53] Ex. 14 at 21–22.

[54] Ex. 14 at 22.

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 20 of 25

Then, at this very last point in the proceedings, the Government asked the Court to remind Mr. Vickers of the terms of the no contact order. Mr. Offret responded that "the victim is here," and "I don't see the need to continue with [the no contact] prohibition against the victim when they have that relationship." He added, "I don't believe that the victim would want that to continue. I think she would like to be able to talk to him; he's the father of the child that she was carrying at the time. So, she's here today if Your Honor wants to talk to her to get her version of what she wants to do."[55] Mr. Vickers asked to confer with his lawyer, and thereafter, Mr. Offret and Mr. Vickers spoke privately. After a pause, Mr. Offret said he was ready to proceed. Mr. Offret made no further application to the Court. The Court ruled it would not modify the no contact order at that time. After the Court's ruling, Mr. Offret stated, "I surmise from what you said that you do not want to hear from the victim today on that point?" to which the Court responded that a change of plea "is not the proceeding for it," but stated that Mr. Vickers could seek by motion to change the terms of the no contact order.[56] At no point in the change of plea proceeding was there any indication that Mr. Vickers sought to call CM as a witness to dispute the factual basis of the plea agreement. Mr. Vickers's and his trial counsel's assertions to the contrary in this Section 2255 proceeding are rejected.

At the fall 2017 evidentiary hearing, Mr. Vickers testified that he is in fact innocent of the carjacking charge. He directly contradicted all of his testimony at the change of plea hearing regarding the factual basis for the plea. He testified in 2017 that he did not

---

[55] Ex. 14 at 25.

[56] Ex. 14 at 28. No such motion was filed; but Mr. Vickers continued to violate the no contact order. *See* Ex. 12 (Show Cause Hearing on April 28, 2014).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 21 of 25

use force, violence, or intimidation to take control of the vehicle; he testified that he did not drive around Anchorage with the victim, essentially holding her hostage and threatening to burn her; and in fact he testified that he was not even driving the vehicle.[57] These assertions were conclusory and unsupported by any specifics. He said he had testified otherwise at the change of plea hearing and pleaded guilty "[b]ecause I believed that I didn't have no other alternatives."[58] He explained that he had no evidence then to prove CM had lied, because his lawyer had been ineffective in reviewing the text messages and obtaining the surveillance footage from the Chevron and Alaska Club Summit.[59]

The United States Supreme Court has recognized the force of the testimony at the original plea hearing:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.[60]

Mr. Vickers's recent testimony constitutes a subsequent presentation of conclusory allegations of innocence unsupported by specifics. And many of his

---

[57] Docket 165 at 113.

[58] Docket 165 at 113.

[59] Docket 165 at 114.

[60] *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 22 of 25

contentions are wholly incredible, as discussed herein. Moreover, the Court observes

that not only did Mr. Vickers testify under oath at the change of plea hearing that he

committed the carjacking, he at no point in 2014 asserted that he had not done the crime.

Indeed, at a separate proceeding before the Magistrate Judge on February 27, 2014, he

testified (against the advice of his attorney), that "I'm not saying that I'm innocent of, you

know what I'm saying, doing the wrong things that I did."[61] And "I'm looking at fifteen or

– on – on this carjacking, five for this, then whatever the state has for me, you know what

I'm saying? It's stressful."[62] He also testified at the February 2014 hearing that his cell

phone records would explain the nature of his relationship with CM: "check my text

messages in my cell phone, and I'll be more than willing to . . . let you guys subpoena

my text phone -- messages where you guys could read our little arguments and then right

after that, sorry, baby, I love you[.]"[63] Notably, he did not testify that the cell phone records

would vindicate him of the carjacking charge. Further, in his recorded phone calls with

CM, Mr. Vickers did not assert he was innocent of the carjacking offense. To the contrary,

on March 14, 2014, he told CM through a third party that "[t]hey are trying to make his

sentence into a life sentence. That means you got to be there with him. They are trying

to put something in his hands that wasn't in there."[64] The Court finds that in this third-

party conversation, Mr. Vickers was urging CM to tell law enforcement that he did not

---

[61] Ex. 15 at 23.

[62] Ex. 15 at 28.

[63] Ex. 15 at 33.

[64] Docket 165 at 223 (Ex. 7, 7a).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 23 of 25

have a gun at the carjacking. He was not urging her to assert he was innocent of the carjacking offense.

For the foregoing reasons, the Court finds that Mr. Vickers has not established that his trial counsel performed deficiently. And even if trial counsel was deficient in any respect, he has not established that he would not have pleaded guilty to the carjacking charge in the absence of such deficient performance.

### 2. Prosecutorial misconduct claim

No evidence was presented that the Government knowingly presented perjured testimony to the grand jury. But Mr. Vickers appears to argue that the Government committed prosecutorial misconduct in April 2014 when it received CM's email in which she indicated that there was no gun. Mr. Vickers maintains that the Government should have reviewed and corrected the grand jury testimony at that time.

Deputy Marshal Liedike received the recantation email from CM at approximately 10:54 a.m. on April 15, 2014 and it was sent to Mr. Offret through the U.S. Attorney's office approximately one hour later that same day.[65] The Government promptly fulfilled its constitutional responsibility of disclosure; no prosecutorial misconduct occurred.[66]

### CONCLUSION

In light of the foregoing, Mr. Vickers's Motion to Vacate at Docket 72 is hereby DENIED.

The Court further finds that Mr. Vickers has not made the requisite substantial

---

[65] Docket 165 at 54-55; Exhibit J.

[66] *See Brady v. Maryland*, 373 U.S. 83 (1963).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 24 of 25

showing of the denial of a constitutional right, and therefore a certificate of appealability will not be issued by this Court.[67] Mr. Vickers may request a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of Court is directed to enter a judgment accordingly.

DATED this 17th day of April, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[67] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability may be granted only if applicant made "substantial showing of the denial of a constitutional right," *i.e.*, showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).

Case No. 3:14-cr-00003-SLG, *United States v. Vickers*
Order re Motion to Vacate Under 28 U.S.C. § 2255
Page 25 of 25